UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.: 19-243(01) (MJD/SER)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | PLEA AGREEMENT AND |
| ) | SENTENCING STIPULATIONS |
| v ) | |
| ) | |
| ROBIN LEE LUSSIER, ) | |
| a/k/a "Ratchet", ) | |
| ) | |
| Defendant. ) | |

The United States of America and ROBIN LEE LUSSIER, (hereinafter referred to as the "defendant"), agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Counts 1 and 2 of the Indictment. Count 1 charges the defendant with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 846, and Count 2 charges the defendant with Assault Resulting in Serious Bodily Injury in Aid of Racketeering, in violation of 18, United States Code, § 1959(a)(3).

1



2. **Factual Basis for Count 1**. It is stipulated that Count 1 of the Indictment is true and that the defendant is guilty of those charges. The defendant agrees that the Government has sufficient evidence to prove the following facts beyond a reasonable doubt at trial:

    a. From on or about December 1, 2015, through on or about January 1, 2019, the defendant was a member of a conspiracy to distribute methamphetamine. The defendant admits that as part of the conspiracy, he personally obtained and attempted to obtain distribution quantities of methamphetamine from sources located in the Minneapolis/St. Paul area. The defendant admits that he then transported, or facilitated the transport of the methamphetamine to areas and towns in northern Minnesota, including but not limited to Cass Lake, Bemidji, and the Red Lake Indian Reservation.

    b. The defendant admits that he introduced other members of the conspiracy to sources for methamphetamine known to the defendant so that the defendant and other members of the conspiracy could profit from the subsequent methamphetamine sales.

    c. The defendant stipulates that the quantity of methamphetamine for which he is responsible is at least 5 kilograms but less than 15 kilograms of methamphetamine (mixture).

3. **Factual Basis for Count 2:**

    a. From in or about the mid-1990's until the present, persons known and unknown formed an enterprise that operated in the United States, including in the State and

District of Minnesota. The members of the enterprise engaged in a criminal conspiracy, the object of which was to conduct or participate in the enterprise's affairs through a pattern of racketeering activity.

b. The enterprise was known as the "Native Mob," an association in fact. The defendant stipulates that the Native Mob shared a common purpose, had a continuity of structure and personnel, and had structure that was distinct from that inherent in the racketeering activity in which it engaged.

c. The defendant stipulates that the Native Mob, would meet as required with other Native Mob gang members to discuss, among other things, past acts of violence and other crimes committed by gang members against rival gang members and others; to notify one another about gang members who were arrested or incarcerated; to discuss the disciplining of Native Mob gang members; to share with one another the identities of individuals who may be cooperating with law enforcement and propose actions to be taken against those individuals; to plan and agree upon the commission of future crimes, including drug-trafficking, murders, robberies, and assaults; and to reinforce gang rules and by-laws. The defendant stipulates that the Native Mob was engaged in acts of drug-trafficking, murder, and robbery at or near the time of the charged assault.

d. The defendant stipulates that members and associates of Native Mob agreed to purchase, maintain and circulate a collection of firearms for use in criminal activity by Native Mob members.

e. The defendant specifically admits the following facts are true: the defendant joined the Native Mob in or about 2011 and has maintained his membership in the enterprise since. The defendant admits that in November of 2018, he obtained criminal discovery ("paperwork") from another Native Mob member charged in the District of Minnesota with the felony offenses related to the distribution of methamphetamine. After reading the discovery, the defendant admits he directed and encouraged one or more other Native Mob members to carry out an assault against the victim, in part, as retaliation for the victim's failure to abide by the rules and expectations of the Native Mob. The defendant further stipulates and agrees that he directed and encouraged the assault of the victim, in part, to maintain or increase his own position within the Native Mob. The defendant stipulates that the victim suffered serious bodily injury[1] and that the harm to the victim was a reasonably foreseeable consequence of the defendant's conduct.

f. The defendant admits that the enterprise existed, that the enterprise affected interstate commerce and that he was associated with the enterprise. The defendant admits that he knew that his conduct was illegal, and that he did so voluntarily and not under coercion or duress.

3. **Statutory Penalties (Count 1)**. The parties agree that Count 1 carries the following statutory penalties:

    a. a mandatory minimum of 10 years' imprisonment

---

[1] The defendant stipulates that the injuries suffered by the victim as the result of the assault include a concussion, blood loss, significant pain, a laceration to the scalp requiring four (4) staples to close, and scarring on his scalp.

4

      b.     a maximum of life imprisonment;

      c.     a supervised release term of at least 5 years;

      d.     a fine of up to $10,000,000;

      e.     a mandatory special assessment of $100.

3.    **Statutory Penalties (Count 2)**. The defendant understands that the maximum punishment for this offense is as follows:

      a.     a maximum term of twenty (20) years imprisonment;

      b.     a term of supervised release of up to 5 years;

      c.     a fine of $250,000;

      d.     a mandatory special assessment of $100; and

      e.     payment of mandatory restitution in an amount to be determined by the Court.

4.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

5.    **Waiver of Pretrial Motions.** The defendant understands and agrees he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States contained herein, the defendant knowingly, willingly and voluntarily gives up the right to file pretrial motions in this case.

6. **Guidelines Calculations**. The parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit either party from presenting to the Court at the time of sentencing any and all evidence which they think relevant to the Court's determination of a just sentence. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and stipulate to the following advisory guidelines calculations.

### Count 1:

a. Base Offense Level. The parties agree that for Count 1 the base offense level is ordinarily 34. *See* U.S.S.G. § 2D1.1(c)(2)(at least 5 kilograms but less than 15 kilograms of methamphetamine (mixture)). However, the defendant appears to be a Career Offender.[2] If the defendant is a Career Offender, **his base offense level is 37.** *See* U.S.S.G. Section 4B1.1(b)(offense with a statutory maximum of life carries a base offense level of 37).

b. Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

c. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **3-level** reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of

---

[2] The defendant has two prior convictions for a "crime of violence": a) in 2011, the defendant was convicted of Second Degree Assault (Beltrami County Case No. 04-CR-10-588); and b) in 2015, the defendant was convicted of Third Degree Assault (Beltrami County Case No. 04-CR-15-133).

responsibility. U.S.S.G. §3E1.1. The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

d. Criminal History Category. Based on information available at this time, the parties believe that the defendant is a Career Offender and that his **criminal history category is VI**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

e. Guideline Range. Based on a total offense level of **37** (Career Offender) – 3 (acceptance of responsibility)), and a criminal history category of VI, the Sentencing Guidelines range for Count 1 is **292-365 months** of imprisonment.

Notwithstanding the potential applicable Guidelines range set forth above, Defendant acknowledges that he is subject to **a statutory minimum sentence of 10 years** on Count 1.

f. Fine Range. If the total offense level is 35, the fine range is $40,000 to $400,000.

g. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least four years. U.S.S.G. § 5D1.2(c).

**Count 2:**

c. Base Offense Level. The parties agree that under § 2A2.2(a)(aggravated assault), the base offense ordinarily applicable to the assault is 14. The parties agree that one specific offense characteristic applies: an additional 5-level increase is applied because the victim suffered serious bodily injury (see § 2A2.2(a)(3)). Therefore, the adjusted offense level for Count 2 is ordinarily 19 (14+5 = 19). However, Defendant appears to be Career Offender. Thus, his **base offense level for Count 2 is 32**. *See* U.S.S.G. Section 4B1.1(b)(offense with a 20-year statutory maximum carries a base offense level of 32).

d. Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

c. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **3-level** reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. §3E1.1. The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

d. Criminal History Category. Based on information available at this time, the parties believe that the defendant is a Career Offender and that his **criminal history category is VI**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

e. Guideline Range. Based on a total offense level of **29** (Career Offender) – 3 (acceptance of responsibility)), and a criminal history category of VI, the Sentencing Guidelines range for Count 2 is **151-188** months of imprisonment.

f. Fine Range. If the total offense level is 29, the fine range is $30,000 to $300,000.

g. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least five years. U.S.S.G. § 5D1.2(c).

11. **Discretion of the Court**. The foregoing Sentencing Guidelines stipulations bind the parties but do not bind the Court. The parties understand the Sentencing

8

Guidelines are advisory and their application is a matter falling solely within the Court's discretion. The Court may make its own determination regarding the applicable guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines the applicable guideline calculations or the defendant's criminal history are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

12. **Sentencing Recommendation and Departures**. The Parties will jointly request that the sentences for Counts 1 and 2 be run concurrently. *See* USSG 5G1.2(c)(sentencing on multiple counts of conviction). The Parties reserve the right to make motions for departure from the applicable guideline and to oppose any such motion made by the opposing party. The Parties reserve the right to argue for a sentence outside the applicable guideline range.

14. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted (U.S.S.G. § 5E1.3). The defendant agrees to pay the special assessment of $200.00 prior to sentencing.

15. **FOIA Requests**. The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

16. **Complete Agreement**. The foregoing sets forth the full extent of the Plea Agreement and Sentencing Stipulations in the above-captioned case. There are no other agreements, promises, representations or understandings.

Date: 2/18/2020

ERICA H. MacDONALD
United States Attorney

BY: ANDREW R. WINTER
Assistant U.S. Attorney
Attorney ID No. 0232531

Date: 2/18/20

ROBIN LEE LUSSIER
Defendant

Date: 2/18/2020

FRED BRUNO, ESQ.
Counsel for Defendant